

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

| | |
|---|---|
| CPK: BTR | *610 Federal Plaza* |
| F. ##2018R01075 | *Central Islip, New York 11722* |

<u>BY ECF AND HAND</u>                                                                March 29, 2019

The Honorable Joan M. Azrack
United States District Judge
United States District Court
Eastern District of New York
924 Federal Plaza
Central Islip, New York 11722-4454

      Re:    United States v. Enayatullah Khwaja and Naseem Bokhari,
              <u>Docket Nos. 18-CR-292(S-1) (JMA) and 18-CR-607(JMA)</u>

Dear Judge Azrack:

     The United States respectfully submits this letter seeking to revoke the bail and detain the defendants Enayatullah Khwaja ("Khwaja"), also known as "Nat," and Naseem Bokhari, also known as "Sammy," ("Bokhari") on the above-referenced indictments as a danger to the community.   This motion is based on evidence of the defendants' continued criminal conduct while released on bail.  18 U.S.C., §§ 3147 and 3148.

<u>Enayatullah Khwaja, also known as "Nat"</u>

     The government initially sought Khwaja's detention as both a risk of flight and a danger to the community in <u>United States v. Enayatullah Khwaja et al</u>, 18-CR-607(JMA), Dkt. 23 (Government's letter-motion seeking detention).  Khwaja, one of the leaders of a trade-based money laundering scheme involving the sale of mobile phones to various companies, paid for by monies, including bulk cash, obtained from various illegal sources, delivered to Khwaja and others in the United States, from a series of unrelated third parties. This scheme resulted in charges of conspiracy to commit money laundering, unlicensed money remitting, structuring, failure to file a report (2 Counts), and interstate and foreign transportation in aid of racketeering enterprises. He faced a maximum exposure of 65 years imprisonment.

      Judge Bianco, to whom the case was originally assigned, found Khwaja to be a risk of flight and a danger to the community and detained him.  Dkt. 40 (Minutes of Arraignment, Nov. 15, 2018, pp. 26-7).  On December 12, 2018, the Court, over the government's

objection granted bail after Khwaja surrendered his Saudi Arabian residency card. The Court released the Khwaja on home detention upon his pledge of a $15 million personal surety bond, partially secured by $10 million in real estate and suretors, with various limitations. A copy of the bond is enclosed. Dkt. 60.

Naseem Bokhari, also known as "Sammy"

Naseem Bokhari, also known as "Sammy," and employee of Enayatullah Khwaja's company Tronix Telecom in Miami, was released on a $500,000 Personal Surety Bond secured with a $250,000 10% bond with a Nebbia condition, and cosigned by the Bokhari's wife, Laila Bokhari in the Southern District of Florida.

The Obstruction of Justice

Subsequent to Khwaja and Bokhari's arraignments, the government discovered, and was able to document through examining seized WhatsApp conversations between the parties, that from August 2, 2018 through February 7, 2019, the defendant Enayatullah Khwaja and two of his employees, Maynor Melendez-Mendoza and Naseem Bokhari, conspired with Mahmoud Ali Barakat to alter records of Tronix dealings with Barakat in order to obstruct the pending prosecutions.

In August 2018, after being arrested in Paraguay on the current indictment for laundering money, Barakat reached out initially to Melendez-Mendoza. Barakat requested records from Tronix that would make it appear that he only had an ordinary business relationship with the company and not involved in "bad (shady) business." In dealing with Tronix, Barakat had already received an invoice from Tronix showing payment for mobile phones from Tronix using third-party bulk cash deliveries to Tronix. A copy of this original invoices showing cash payments was provided to Barakat's defense as part of the government discovery on December 12, 2018.

Khwaja, Melendez-Mendoza and Naseem Bokhari understood Barakat's request required them to create a false invoice of their dealings with Barakat. As this was being done, Barakat followed up his request to Melendez-Mendoza with additional discussions with Khwaja and Bokhari. Khwaja, Bokhari and Mendoza, after multiple conversations, agreed to hide the third–party delivery of bulk cash payments. On the altered document they created, all reference to cash was removed, so that the transactions as Barakat requested, would now appear to be ordinary business transactions and not "bad (shady) business." Khwaja, Melendez-Mendoza and Bokhari did nothing to stop the fraud on the court that they had set in motion by their creation of this altered document. As Khwaja, Melendez-Mendoza and Bokhari understood it would be, this record was then used by Barakat and his counsel as evidence that he was not involved in "bad (shady) business" and submitted as Barakat's only exhibit in support of a bail application on February 7, 2019 before Magistrate Judge Lindsay. See: United States v Muhmoud Barakat 18 Cr 292(JMA), Letter to Hon. Arlene R. Lindsay, Docketed under seal. A copy of the Government's response is attached.

On Wednesday, March 27, 2109, the Grand Jury superseded the indictment in United States v Mahmoud Ali Barakat, 18 CR 292 by adding charges against Barakat, Enayatullah Khwaja. Maynor Melendez-Mendoza, and Naseem Bokhari for Conspiracy to Obstruct Justice (Count Three) in violation of Title 18, United States Code, Sections 1512(k) and Obstruction of Justice (Count Four) in violation of Title 18, United States Code, Sections 1512(c)(l) and 1512(c)(2).  Barakat and Maynor Melendez-Mendoza are presently detained.

Given the new charges against Khwaja and Bokhari, which continued while Khwja and Bokhari were released on bail under indictment 18-CR-607(JMA), the government requests that a permanent order of detention be issued against Enayatullah Khwaja and Naseem Bokhari, as they have proved themselves a danger to the community.

**RELEVANT LEGAL STANDARDS FOR DETENTION**

"The Bail Reform Act authorizes pretrial detention upon the court's finding that 'no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community.'" United States v. Agnello, 101 F. Supp. 2d 108, 109 (E.D.N.Y. 2000) (quoting 18 U.S.C. § 3142(e)).   At a detention hearing, the Court shall consider, among other factors, "the available information concerning—"

(1) The nature and circumstances of the offense charged;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person;

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

Detention may be ordered on dangerousness grounds if the government establishes such grounds by clear and convincing evidence.  See 18 U.S.C. § 3142(f)(2).  The rules governing admissibility of evidence at trial, however, do not apply in a detention hearing. Id.; Fed. R. Evid. 1101(d)(3).  Accordingly, the government submits this evidence by way of proffer.  See United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000) (explaining that the government is entitled to proceed by proffer in a detention hearing) (citing United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995)); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986) (same).

Further, Title 18, United States Code § 3148(a) states, in pertinent part:

3

> A person who has been released . . . , and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court.

## THE DEFENDANTS SHOULD BE DETAINED

### Danger to the Community

A judge may detain a defendant if that defendant's release "will endanger the safety of any other person or the community." 18 U.S.C. § 3142(e). The Bail Reform Act's concept of dangerousness, while creating a presumption in cases of violent crimes and narcotics distribution, is not limited to such cases and may in some instances also encompass so-called white-collar frauds. A defendant may be found to pose a danger to the community when he is likely to commit non-violent crimes that harm the community as well. United States v. Madoff, 316 F. App'x 58, 59-60 (2d Cir. 2009) (affirming denial of bail pending sentencing based on danger to the pecuniary safety of the community); Evidence of obstruction of justice qualifies as a danger to the community. See United States v. LaFontaine, 210 F.3d 125, 134–35 (2d Cir.2000). See Also United States v. Fishenko, 12 Cr 626(SJ)(2013, EDNY), 2013 WL 3934174 (Altering of records in international export fraud sufficient to merit detention). "[W]here there is a strong probability that a person will commit additional crimes if released, the need to protect the community becomes sufficiently compelling that detention is, on balance, appropriate." United States v. Colombo, 777 F.2d 96, 100 (2d Cir. 1985) (quoting S. Rep. No. 225 at 7; 1984 U.S. Code Cong. & Ad. News at 3189). Here, Khwaja and Bokhari pose a danger to the community because of his continuing conspiracy to obstruct justice

## CONCLUSION

For the reasons set forth above, as well as any additional facts that the government will present at the detention hearing, the defendants Enayatullah Khwaja and Naseem Bokhari, should be held without bail pending trial.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By: _/s/ *Charles P. Kelly*_____
CHARLES P. KELLY
BURTON T. RYAN, JR.
Assistant U.S. Attorneys

cc: Counsel for defendants